**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
T STREET DEVELOPMENT, L.L.C.,  )
                               )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No. 05-524 (GK)
                               )
DEREJE & DEREJE, et al.,       )
                               )
          Defendants.          )
                               )
```

**MEMORANDUM OPINION**

Plaintiff is T Street Development, L.L.C. ("T Street Development"), a District of Columbia limited liability corporation. Defendants are Dereje & Dereje, a general partnership organized under District of Columbia law; Dereje Dergie, a citizen of North Carolina; and Dereje Yadeta, a citizen of Maryland. Invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), Plaintiff seeks declaratory, injunctive, and legal relief, including an order directing specific performance of a real estate contract the parties executed in December 2004.

This matter is now before the Court on Defendants' Amended Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, for Summary Judgment [#26].[1]  Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendants' Motion is hereby **denied.**

---

[1] The Court strongly suggests that defense counsel proof-read his filings in the future.  The number of errors in the pleadings not only distracted from their substance but evidenced a disturbing lack of care and professionalism.

I.    **BACKGROUND**[2]

On October 28, 2004, Thomas A. Hart, Jr. entered into a contract ("the October contract") with Defendants to buy two pieces of property in the District of Columbia for $925,000: 635-637 T Street, N.W. and 634-636 Florida Avenue, N.W. (collectively "the Dereje property"). See First Am. Compl. ¶ 9. At the time, Hart was doing business under the name "T Street Corporation" and although the contract names that entity as the "purchaser," Hart signed the agreement in his own name. See id. ¶ 1; see also First Am. Compl. Ex. 1.

The contract is a standard form agreement that bears the National Association of Realtors logo. It contains "time of essence" and integration clauses and allows free assignment of the parties' rights and obligations. See First Am. Compl. Ex. 1. The contract names North American Title Company ("North American") as the escrow agent responsible for administering the closing and sets the closing date for December 22, 2004 or seven days following the expiration of the current tenants' right of first refusal, whichever is later. See id. Hart gave Defendants a $50,000

---

[2]    For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true and liberally construed in favor of the plaintiff. See EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 625 (D.C. Cir. 1997). Therefore, the facts set forth herein are taken from the Complaint or from the undisputed facts presented in the parties' briefs.

deposit to secure his interest in the property, which was placed in escrow with North American. <u>See</u> First Am. Compl. § 10.

Prior to closing, the parties executed a new contract on December 17, 2004 ("the December contract") that is the subject of this dispute. <u>See</u> <u>id.</u> ¶ 14. Its terms are identical to the parties' previous contract, including the "time of essence," integration, assignment clauses, and the names of the purchaser and sellers. <u>See</u> First Am. Compl. Ex. 3. Superceding the parties' earlier arrangement, however, the December contract sets the closing for January 28, 2005 or seven days following the expiration of the current tenants' right of first refusal, whichever is later. <u>See</u> <u>id.</u>

After signing the December contract, Hart proceeded with plans to develop the entire block on which the Dereje property is located. <u>See</u> First Am. Compl. ¶¶ 20-24. He invested approximately $75,000 in real estate appraisals, zoning analyses, and the preparation of architectural plans and transactional documents. <u>See</u> <u>id.</u> In December 2004 and January 2005, moreover, Hart entered into contracts to purchase two properties adjacent to the Dereje Property: 631 T Street, N.W. and 633 T Street, N.W.. <u>See</u> <u>id.</u> Hart contends that purchasing the Dereje property was central to his development plans and that he took these other actions in reliance on the December contract. <u>See</u> <u>id.</u> ¶ 26.

On January 5, 2005, North American requested several documents

from Defendants that would be necessary for the closing; it is unclear whether Defendants ever provided them. See id. ¶ 15. On January 28, 2005, the parties did not close on the Dereje property as scheduled. See id. ¶ 16. Instead, at the suggestion of Defendants' agent, the parties orally agreed that the closing would be postponed and that the purchase price would increase by $200 per day until closing occurred. See id. That agreement was later memorialized in a February 14, 2005 letter from Plaintiff's attorney to Defendants. See First Am. Compl. Ex. 4.

By letter dated February 10, 2005, North American informed Defendants that it had all the documents it needed and that the closing would occur on February 16, 2005. See First Am. Compl. ¶ 17. On February 15, 2005, one day prior to the scheduled closing, Hart created Plaintiff T Street Development, L.L.C. See id. ¶ 29.[3]

On February 16, 2005, Hart prepared to tender $928,600 to Defendants, reflecting the original purchase price plus $200 per day for each day that had elapsed since the originally-scheduled closing date of January 28, 2005. See First Am. Compl. ¶ 30. He secured a certified bank check for $248,057.29 and his lender wired funds covering the balance into North American's escrow account. See id. Without giving prior notice, however, Defendants did not

---

[3]   On April 22, 2005, after filing this suit, Hart executed a written assignment transferring all his rights and obligations pursuant to the December contract to T Street Development. See Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. Ex. A.

attend the scheduled closing. <u>See</u> <u>id.</u> ¶ 31. On February 17, 2005, Defendants, through their agent, informed Hart that they did not intend to proceed with the sale. <u>See</u> <u>id.</u> ¶ 33.

Plaintiff filed this action in the Superior Court of the District of Columbia on February 23, 2005. On March 14, 2005, Defendants properly removed the matter to this Court. <u>See</u> <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 195 (1990) (holding that for diversity purposes, a general partnership is considered a citizen of all states in which the partners reside).

In Count I of its First Amended Complaint, filed on May 6, 2005, Plaintiff claims that the December contract remains in effect and requests declaratory judgment to that effect as well as an injunction prohibiting Defendants from selling the Dereje property to anyone else. <u>See</u> First Am. Compl. at 8. In Count II, Plaintiff maintains that "[it] and its predecessor in interest have performed all of their obligations under the December . . . contract," and requests an order directing specific performance of that contract. <u>Id.</u> Should the Court decline to order specific performance, Plaintiff requests, in Count III, $200,000 in compensatory damages for Defendants' alleged breach of the December contract. <u>See</u> <u>id.</u> at 9.

On August 26, 2005, Defendants filed the instant Amended Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, for Summary Judgment [#26] ("Defs.' Mot.").

## II.  STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Complaint or, in the alternative, for summary judgment.  Where, as here, the Court must consider "matters outside the pleading" to reach its conclusion, a Motion to Dismiss "must be treated as one for summary judgment and disposed of as provided in Rule 56."  See Fed. R. Civ. P. 12(b); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003) (noting that when a judge considers matters outside the pleadings, a motion to dismiss under Rule 12(b)(6) must be converted into a Motion for Summary Judgment under Rule 56).

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.'" <u>Id.</u> at 324.  <u>See</u> <u>Laningham v. U.S.</u>
<u>Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has
affirmative duty to provide enough evidence that a "reasonable jury
could return a verdict" in its favor); <u>see</u> <u>also</u> <u>Bias v. Advantage</u>
<u>Intern., Inc.</u>, 905 F.2d 1558, 1561 (D.C. Cir. 1990) ("The nonmoving
party 'must do more than simply show that there is some
metaphysical doubt as to the material facts . . . [it] must come
forward with 'specific facts showing that there is a genuine issue
for trial.'" (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>
<u>Corp.</u>, 475 U.S. 574, 586 (1986))).

     In deciding a motion for summary judgment, a "court must draw
all reasonable inferences in favor of the nonmoving party, and it
may not make credibility determinations or weigh the evidence."
<u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150
(2000); <u>see</u> <u>also</u> <u>Washington Post Co. v. U.S. Dep't of Health and</u>
<u>Human Servs.</u>, 865 F.2d 320, 325 (D.C. Cir. 1989).  Ultimately, a
court must determine "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law."
<u>Anderson</u>, 477 U.S. at 251-52.  "If material facts are susceptible
to divergent inferences, summary judgment is not available."
<u>Coward v. ADT Sec. Sys. Inc.</u>, 194 F.3d 155, 158 (D.C. Cir. 1999).

## III. ANALYSIS

### A.   Plaintiff Has Standing to Bring this Case.

Defendants argue that Plaintiff, T Street Development, lacks standing to enforce the December contract.  They contend that, because the December contract names "T Street Corporation" as the purchaser, an entity that Hart never chartered or registered as a trade name, Hart is not a party to that contract.  See Defs.' Mot. at 4-5.  Further, they argue that because Hart had no interest in the December contract and therefore "nothing to assign to Plaintiff," his attempted assignment on April 22, 2005 to the Plaintiff was illusory.  Id. at 10.  Accordingly, Defendants argue, Plaintiff has no interest in the December contract, as assignee or otherwise, that it can enforce here.

### 1.   Even if "T Street Corporation" was an unregistered and improper trade name, that fact alone does not invalidate the December contract.

Defendants devote considerable attention to the fact that Hart did not register "T Street Corporation," the purchaser named in the December contract, as a trade name.  See, e.g., Defs.' Mot. at 5-9. This fact alone, they argue, renders the December contract "null and void" and precludes Plaintiff from enforcing it.  See id. at 5. Plaintiff denies that "T Street Corporation" was a trade name at all.   Instead, Plaintiff argues, it was the name of an unincorporated entity for which Hart was acting as a promoter in 2004 and 2005 but which he later replaced with the Plaintiff

limited liability corporation "T Street Development."   See Pl.'s Opp'n at  4.

District of Columbia municipal regulations require any individual doing business under a trade name to register it with the Department of Consumer and Regulatory Affairs.   See D.C. Mun. Regs. tit. 17 § 8900.   Failure to register a trade name precludes an individual from filing suit under that name and may result in fines or other penalties.   See id. §§ 8908.1, 8914.   Nevertheless, an individual's "failure to properly register a trade name" does not "impair the validity of any contract" executed by that individual.   Id. § 8908.2.

Although Defendants try to create ambiguity in the District's regulations,[4] they are perfectly clear on their face: whether an individual properly registers a trade name has no bearing on the validity of any contract he or she executes using that name.   See

---

[4] Defendants correctly point out that the word "corporation" cannot be part of a registered trade name in the District of Columbia.   See D.C. Mun. Regs. Tit. 17 § 8999.1 (2004).   Therefore, they argue, because Section 8908.2 modifies the verb "register" with the adverb "properly," and because Plaintiff could not "properly" register a trade name containing the word "corporation," that section does not apply here and cannot save the December contract.   See Defs.' Mot. at 8.

This is not a convincing interpretation of Section 8908.2. The regulation plainly states that an individual's failure to register a trade name does not impair the validity of any contract he or she executes.   It makes no distinction between individuals who fail to register a trade name because the proposed name would be invalid and individuals who fail to register for any other reason.   It only states, simply, that a contract may be valid notwithstanding an individual's failure to register the trade name he or she is using.

id. Thus even if Hart was using "T Street Corporation" as a trade name at the time he negotiated and signed the December sales contract, a fact that Plaintiff specifically disputes,[5] the contract could still be valid notwithstanding his failure to register that name.

<blockquote>

**2.   Hart had the power to assign to Plaintiff his interests in the December contract.**

</blockquote>

Defendants further challenge Plaintiff's attempt to assert standing as Hart's assignee.  They argue that because "T Street Corporation" was never properly chartered, and is thus a "nullity for all purposes," the December contract "fails as a matter of law."  See Defs.' Mot. at 12-13.  In Defendants' view, neither Plaintiff nor Hart have any cause of action.

In the District of Columbia, "all persons who assume to act as a corporation without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."  D.C. Code § 29-101.139.  As a result, when a corporate promoter signs a contract or note on behalf of the corporation, he or she is personally liable until the corporation is properly chartered and assumes the promoter's obligations.  See Robertson v. Levy, 197 A.2d 443, 446 (D.C. 1964); see also Shoreham Hotel Ltd. P'ship v. Wilder, 866 F. Supp. 1, 4 (D.D.C. 1994). Applying this principle to the instant facts, there is no question

---

[5]  The existence of that dispute over a material fact would in and of itself preclude summary judgment.

that when Hart signed the December contract on behalf of "T Street Corporation," he became the real party in interest under it and incurred personal liability for all obligations arising out of it.

Whether Hart's personal liability under the December contract also authorizes him to enforce it against Defendants is an issue that District of Columbia courts have not addressed. The weight of authority from other jurisdictions concludes, however, that corporate promoters do retain the power to enforce pre-incorporation contracts – even if the proposed corporation never even comes into being. See, e.g., Fish v. Tandy Corp., 948 S.W. 2d 886, 898 (Tex. App. 1997) ("Because any enforceable agreement is mutual and binding on both parties, logic dictates [that] a promoter who is liable under an agreement may also may make a claim under such a contract."); Gardner v. Madsen, 949 P.2d 785, 789 (Utah Ct. App. 1997) ("[T]he individual who signs a contract in the name of a nonexistent corporation can be a party to the contract."); White v. Dvorak, 896 P.2d 85, 90 (Wash. Ct. App. 1995) ("Absent unfair prejudice . . . from the use of a corporate name in the contract, [the individual purporting to act for a corporation] is a party to the contract and has an individual cause of action for its breach."); see also 3 Arthur L. Corbin et al. CORBIN ON CONTRACTS § 546 (noting the presumption that all parties intended to be bound underlies every contract); 1A William Meade Fletcher et al. FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 271 ("The

mutuality, which is essential in all contracts, not only makes promoters' contracts binding on the promoters, but it also allows them to enforce the contracts insofar as they have rights under it."). The Court finds the reasoning in these cases persuasive.

If Hart is liable under the December contract and may sue to enforce it, it follows that he also has the power to assign his rights under it.[6] When he executed the April 22, 2005 assignment, therefore, T Street Development succeeded to all his rights and obligations under the December contract, including the right to enforce it against Defendants. As a result, Plaintiff has standing.

**B. Because There Are Genuine Issues of Material Fact Regarding the Validity of the December Contract, Summary Judgment Is Inappropriate.**

Defendants also contend that the December contract is invalid on the merits. They argue, first, that the December contract is invalid because the identity of the purchaser cannot be discerned from the document itself. See Defs.' Mot. at 13-17. Second, Defendants argue that the parties' January 28, 2005 oral agreement to change the closing date is unenforceable. See id. at 20-23. Third, they argue that the December contract is invalid because there is no "mutuality of obligation . . . between the alleged purchaser Hart and the Defendants." Id. at 17. It is not

---

[6] As noted supra, the December contract contains a clause allowing either party to assign its rights at any time.

necessary to address all three of Defendants substantive arguments at this time, however, because the instant Motion can be resolved with reference to the first two.

> **1.  Whether there was a mutual mistake by the parties to the December contract is an issue of fact, not of law.**

Despite their extensive negotiations with Hart regarding the December contract, and ignoring the fact that Hart executed that document in his own name, Defendants now suggest that the contract is void because they cannot identify the purchaser.  Citing a 1944 opinion by our Court of Appeals interpreting the District of Columbia Statute of Frauds, they allege that the "actual identity of the purchaser and seller must be ascertainable from the four corners of the written contract."  See id. at 13 (quoting Ochs v. Weil, 142 F.2d 758, 760 (D.C. Cir. 1944)).  The December contract fails to comport with this requirement, Defendants argue, because it names "T Street Corporation" as the purchaser and it is impossible to "demonstrate that Hart is the purchaser" without resorting to inadmissible parol evidence.  See Defs.' Mot. at 14-15.

The D.C. Statute of Frauds requires that any contract for the sale of real estate be in writing and signed by the party against whom enforcement is sought.  See D.C. Code § 28-3502.  In this case, both requirements are clearly met: the December contract bears the signatures of both Dereje Dergie and Dereje Yadeta.  See

-13-

First Am. Compl. Ex 1.  Defendants' reliance on <u>Ochs v. Weil</u>, moreover, is misplaced.  That case concerned a real estate contract in which there was no mention of the seller (not the buyer).  <u>See</u> <u>Ochs</u>, 142 F.2d at 760.  Here, by contrast, whatever confusion the Defendants may claim about the identity of the buyer, they cannot argue that the December contract fails to identify any buyer at all.  Furthermore, <u>Ochs</u> held that the sales contract should be enforced notwithstanding its omitted term.  <u>See</u> <u>id.</u>  Therefore, under any reasonable interpretation of the facts, Defendants cannot establish that the December contract violates the Statute of Frauds.

Alternatively, Defendants suggest that there was a mutual mistake as to the identity of the purchaser.  <u>See</u> Defs.' Mot. at 15-17.  Even if true, such a mistake does not compel summary judgment in Defendants' favor.  The doctrine of mutual mistake of fact allows "a contract [to] be rescinded if the contracting parties entertained a <u>material mistake of fact</u> that went to the heart of their bargain."  <u>Bituminous Coal Operators Ass'n, Inc. v.</u> <u>Connors</u>, 867 F.2d 625, 635 (D.C. Cir. 1989) (emphasis added); <u>see</u> <u>also</u> Restatement (Second) of Contracts § 152.  As its name suggests, the doctrine necessarily entails a consideration of facts.  In this case, Defendants cannot invoke it without reference to facts that Plaintiff vigorously disputes, namely whether there was genuine confusion about the identity of the purchaser and

whether that identity "went to the heart" of the December sales contract. Id. Given that such facts are contested, the Court cannot enter summary judgment on this ground.

>    **2.    The validity of the parties' January 28, 2005 oral agreement depends on whether Plaintiff reasonably relied on that agreement, which is also a question of fact.**

Defendants also argue that the Statute of Frauds bars enforcement of the parties' January 28, 2005 agreement to postpone the closing date, and the February 14, 2005 letter from Plaintiff's attorney confirming it. See Defs.' Mot. at 20-27.

In the District of Columbia, any modification of a real estate contract containing a "time of essence" clause falls within the Statute of Frauds and must be in writing. See Landow v. Georgetown-Inland West Corp., 454 A.2d 310, 313-14 (D.C. 1982); Schneider v. Dumbarton Developers Inc., 767 F.2d 1007, 1015-16 (D.C. Cir. 1985). Nevertheless, an oral agreement to modify such a contract may be valid if a party relies to its detriment on that agreement. See Landow, 454 A.2d at 313 n.3; Brewood v. Cook, 207 F.2d 439, 441 (D.C. Cir. 1953).

Whether the parties' agreement to postpone the closing date is valid thus depends on whether Plaintiff detrimentally relied on it. That determination turns on an inquiry into disputed facts, including whether Hart, or Plaintiff, as his successor in interest, relied on the January 28, 2005 agreement in pursuing larger development plans for the area surrounding the Dereje property.

This is not an issue that can be resolved as a matter of law.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Amended Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, for Summary Judgment [#26] is **denied.**

An Order will issue with this Memorandum Opinion.


December 19, 2005
                                    __/s/_____
                                    Gladys Kessler
                                    U.S. District Judge


**Copies to**: **attorneys on record via ECF**